## [ORAL ARGUMENT NOT SCHEDULED]

### No. 09-5354

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————

### SEAN GERLICH, et al.,

#### Plaintiffs-Appellants,

### v.

### UNITED STATES DEPARTMENT OF JUSTICE, et al.,

#### Defendants-Appellees.

—————————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————

## FINAL BRIEF FOR FEDERAL APPELLEE

—————————————

**STUART F. DELERY**
  *Acting Assistant Attorney General*

**RONALD C. MACHEN JR.**
  *United States Attorney*

**MARK B. STERN**
**MICHAEL S. RAAB**
**DANIEL TENNY**
  *(202) 514-1838*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.    **Parties and Amici.**

Plaintiffs in the district court were Sean M. Gerlich, Christopher D. Coleman, James K. Gooch, Benjamin M. Meier, James N. Saul, Jennifer A. Zajac, Matthew J. Faiella, Daniel J. Herber, and Ryan S. Spiegel.  The defendants in the district court were the U.S. Department of Justice, Monica M. Goodling, Michael J. Elston, Esther S. McDonald, Alberto R. Gonzales, and Louis G. DeFalaise.  Only plaintiffs Faiella, Herber, and Saul are pursuing an appeal in this Court, and the appeal is being pursued only against the Department of Justice.  There were no amici in the district court.

## B.    **Rulings Under Review.**

Plaintiffs seek review of the following rulings issued by the district court (Bates, J.):

Order and accompanying opinion granting in part motion to dismiss, Dkt. Nos. 96-97 (Sept. 16, 2009), reported at 659 F. Supp. 2d 1 [JA 269];

Memorandum and order denying reconsideration, Dkt. No. 116 (Nov. 13, 2009), unpublished [JA 318];

Memorandum opinion and order denying class certification, Dkt. No. 133 (Apr. 19, 2010), unpublished [JA 327];

Order denying reconsideration, Dkt. No. 139 (June 4, 2010), unpublished [JA 333]; and

Memorandum Opinion granting summary judgment, Dkt. No. 185 (Dec. 15, 2011), unpublished [JA 589].

### C.   **Related Cases**.

This case was previously before this Court on a Petition for Permission to Appeal Under Rule 23(f), No. 10-8003, which was denied in an unpublished order dated October 5, 2010 [JA 388].

s/ Daniel Tenny
Daniel Tenny

# TABLE OF CONTENTS

**Page**

GLOSSARY

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES ...........................................................2

PERTINENT STATUTES AND REGULATIONS.................................2

STATEMENT OF THE CASE ...............................................................3

STATEMENT .........................................................................................5

    A.      Statutory Background. .................................................5

           1.    The Privacy Act .....................................................5

           2.    Federal Records Act ...............................................6

    B.      Factual Background.....................................................9

    C.      Prior Proceedings. ....................................................11

SUMMARY OF ARGUMENT ............................................................16

STANDARD OF REVIEW ..................................................................18

ARGUMENT.........................................................................................19

    I.      The record does not demonstrate that the Department created records reflecting plaintiffs' exercise of their First Amendment rights, or that consideration of such records would have been the cause of their injuries. ...........19

           A.    Plaintiffs have not offered evidence that improper records were created as to them, or that any record caused actual damages.........................................19

B.    The destruction of certain materials at the conclusion
of the hiring process does not give rise to any
sanction, much less a dispositive one. ...............................26

1.    No sanction is warranted, much less a
dispositive one, in the absence of any
determination that these materials must be
preserved......................................................................26

2.    The Federal Records Act does not authorize any
adverse inference. ........................................................33

3.    Plaintiffs' other asserted bases for a
spoliation inference are mistaken.............................42

C.    Class certification was not warranted................................45

II.    THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS'
REMAINING PRIVACY ACT CLAIMS BECAUSE THE RECORDS AT
ISSUE WERE NOT MAINTAINED IN A SYSTEM OF RECORDS..................47

CONCLUSION .......................................................................................53

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE
OFAPPELLATE PROCEDURE 32(A)(7)

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                        <u>Page</u>

*Albright v. United States,*
     631 F.2d 915 (D.C. Cir. 1980)........................................... 6, 12, 13, 49

*Armstrong v. Bush,*
     924 F.2d 282 (D.C. Cir. 1991)............................................... 9, 36, 37

*Centrifugal Force, Inc. v. Softnet Commc'n, Inc.,*
     783 F. Supp. 2d 736 (S.D.N.Y. 2011) ...............................................45

*Curcio v. Roosevelt Union Free Sch. Dist.,*
     Cv. No. 10-5612, 2012 WL 3236645 (E.D.N.Y. Aug. 10, 2012)....................44

*Doe v. Chao,*
     540 U.S. 614 (2004)...........................................................................21

*Hubbard v. EPA,*
     809 F.2d 1 (D.C. Cir. 1986)........................................................ 25, 26

*Hutchins v. District of Columbia,*
     188 F.3d 531 n.3 (D.C. Cir. 1999) ...................................................48

*Kissinger v. Reporters Committee for Freedom of the Press,*
     445 U.S. 136 (1980)........................................................................9, 36

*Kronisch v. United States,*
     150 F.3d 112 (2d Cir. 1998) ....................................................... 26, 27

* *Maydak v. United States,*
     363 F.3d 512 (D.C. Cir. 2004).................................................... 6, 12, 48

*Maydak v. United States,*
     630 F.3d 166 (D.C. Cir. 2010)...........................................................49

     * Authorities upon which we chiefly rely are marked with an asterisk.

*McCready v. Nicholson*,
    465 F.3d 1 (D.C. Cir. 2006)..................................................... 6, 13, 49

*Talavera v. Shah*,
    638 F.3d 303 (D.C. Cir. 2011).........................................................41

\* *Webb v. District of Columbia*,
    146 F.3d 964 (D.C. Cir. 1998)........................................ 18, 28, 29, 30

*Winder v. Erste*,
    566 F.3d 209 (D.C. Cir. 2009).........................................................18

**Statutes:**

5 U.S.C. § 552a(e) ..........................................................................49

5 U.S.C. § 552a(e)(1) ...................................................................5, 12

5 U.S.C. § 552a(e)(2) ...................................................................5, 12

5 U.S.C. § 552a(e)(3) .........................................................................5

\* 5 U.S.C. § 552a(e)(5) ........................................................ 4, 5, 6, 21

5 U.S.C. § 552a(e)(6) ...................................................... 5, 12, 50, 51

\* 5 U.S.C. § 552a(e)(7)...................................................... 4, 5, 6, 21

5 U.S.C. § 552a(e)(9) .................................................................. 12, 51

5 U.S.C. § 552a(e)(10) .....................................................................51

\* 5 U.S.C. § 552a(g)(4)(A)................................................................21

28 U.S.C. § 1291...............................................................................1

28 U.S.C. § 1331...............................................................................1

44 U.S.C. § 2904(a).......................................................................7, 8

44 U.S.C. § 2904(c) ................................................................8

44 U.S.C. § 3101 ....................................................................7

44 U.S.C. § 3102 ....................................................................8

44 U.S.C. § 3105 ....................................................................8

44 U.S.C. § 3301 .......................................................... 7, 34, 39

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ....................................................1

**Regulations:**

5 C.F.R. § 335.103(b)(5) ......................................................41

29 C.F.R. § 1602.14 ............................................................41

36 C.F.R. § 1222.10(b)(6) ................................................8, 34

36 C.F.R. § 1222.12(c) .........................................................39

**Other Authorities:**

Department of Justice, *Overview of the Privacy Act,*
    *available at* http://www.justice.gov/opcl/1974privacyact.pdf .......... 49, 50

v

# GLOSSARY

| | |
|---|---|
| DOJ | Department of Justice |
| FRA | Federal Records Act |
| OIG | Office of Inspector General |
| OPR | Office of Professional Responsibility |

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

No. 09-5354

———————————————

SEAN GERLICH, et al.,

Plaintiffs-Appellants,

v.

U.S. DEPARTMENT OF JUSTICE, et al.,

Defendants-Appellees.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————

FINAL BRIEF FOR FEDERAL APPELLEE

———————————————

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331.  Plaintiffs

filed a notice of appeal in 2009 prior to entry of final judgment, which was

held in abeyance, *see* Order (Nov. 10, 2009).  The district court entered final

judgment on December 15, 2011, and plaintiffs filed a second notice of

appeal on February 10, 2012, that was timely under Fed. R. App. P.

4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

In this Privacy Act litigation, plaintiffs urge that the government's creation of inappropriate records caused them to be removed from the pool of candidates who were interviewed for positions at the Department of Justice.  Plaintiffs did not attempt to produce evidence that the Privacy Act was violated as to them in particular, or that any Privacy Act violation caused them harm, instead seeking to rely on a spoliation inference based on the destruction of records.  The issues presented are:

1.      Whether the district court correctly granted summary judgment to the government based on the absence of evidence to prove plaintiffs' claims.

2.      Whether, in granting the government's motion to dismiss a related set of Privacy Act claims, the district court erred in relying on Circuit precedent for the proposition that certain subsections of the Privacy Act are only implicated when records are maintained in a system of records.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in an addendum to this brief.

## STATEMENT OF THE CASE

This case arises against the background of the well-publicized improprieties that marred the operation of the Attorney General's Honors Program in 2006.  The Honors Program is the exclusive means by which components of the Department of Justice hire graduating law school students and current judicial law clerks.  In 2006, a centralized Screening Committee rejected an unusually high number of applicants selected by the hiring components for interviews.  A report issued by DOJ's Office of the Inspector General (OIG) and Office of Professional Responsibility (OPR) later found that two members of this Committee had taken political and ideological considerations into account in making these determinations.

Plaintiffs are several individuals whose names were removed from the list of proposed interviewees by the review committee.  Their complaint asserted claims under the Constitution, the Civil Service Reform Act, and the Federal Records Act that were dismissed and were not appealed.

The claims at issue on appeal arise under the Privacy Act.  Plaintiffs focus, in particular, on their claim that the Screening Committee created records that bear on the exercise of their First Amendment rights and that

3

should have been irrelevant to the hiring decision. According to plaintiffs, these actions violate 5 U.S.C. § 552a(e)(7), which provides that an agency may "maintain no record describing how any individual exercises rights guaranteed by the First Amendment," and 5 U.S.C. § 552a(e)(5), which requires agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."

In granting summary judgment for the government, the district court concluded that plaintiffs could not establish that the Screening Committee created such records with respect to any of the plaintiffs. Plaintiffs' claim failed for the additional reason that they could not demonstrate that the records, if they existed, would have been the cause of their removal from the interviewee list.

In granting summary judgment for the government, the district court denied plaintiffs' motion for a "spoliation" sanction. The court held that no "spoliation" of evidence had occurred and that plaintiffs were not entitled to an evidentiary inference that the records existed and had resulted in their removal from the interviewee pool. The court rejected plaintiffs'

4

contention that the Committee had violated the Federal Records Act by failing to retain, after the hiring process was completed, the materials that had been created by its members. The court explained that the records disposition schedule established by the Department of Justice in 1981 required it to maintain the materials submitted by an applicant for one year. The Department had imposed no similar requirement on notes or printouts made by persons who review the applications.

## STATEMENT

### A. STATUTORY BACKGROUND.

#### 1. The Privacy Act

The Privacy Act governs federal agencies' acquisition, maintenance, and control of certain information about individuals. The Act imposes requirements relating to the collection of information, *see* 5 U.S.C. § 552a(e)(2), (3), the relevance and accuracy of information, *see id.* § 552a(e)(1), (5), (7), and the dissemination of information, *see id.* § 552a(e)(6).

This appeal principally concerns two provisions regarding the maintenance of records. Under subsection (e)(5), an agency that maintains a system of records must "maintain all records which are used by the

agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." *Id.* § 552a(e)(5). Under subsection (e)(7), agencies must "maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." *Id.* § 552a(e)(7).

Unlike many of the other provisions of the Privacy Act, these subsections apply to all records maintained by an agency that maintains a system of records, regardless of whether the particular records at issue are in the system of records. *Compare McCready v. Nicholson*, 465 F.3d 1, 10–12 (D.C. Cir. 2006) (addressing subsection (g)(1)(C), which provides remedies for violations of subsection (e)(5)), and *Albright v. United States*, 631 F.2d 915, 918–20 (D.C. Cir. 1980) (subsection (e)(7)), *with Maydak v. United States,* 363 F.3d 512, 518–19 (D.C. Cir. 2004) (other subsections).

### 2.    Federal Records Act

The Federal Records Act sets forth general requirements for the creation, management, and disposal of records. It requires the head of each

federal agency to "make and preserve records containing adequate and

proper documentation of the organization, functions, policies, decisions,

procedures, and essential transactions of the agency and designed to

furnish the information necessary to protect the legal and financial rights of

the Government and of persons directly affected by the agency's activities."

44 U.S.C. § 3101. In addition, the Archivist of the United States is to

"provide guidance and assistance to Federal agencies . . . to ensur[e]

adequate and proper documentation of the policies and transactions of the

Federal Government and ensur[e] proper records disposition." *Id.*

§ 2904(a).

The Federal Records Act affects only the disposition of "records."

That term is defined to include only documents "preserved or appropriate

for preservation . . . as evidence of the organization, functions, policies,

decisions, procedures, operations, or other activities of the Government or

because of the informational value of data in them." *Id.* § 3301. By

regulation, the term "appropriate for preservation" includes only those

materials "which, in the judgment of the agency, should be filed, stored, or

otherwise systematically maintained by an agency because of the evidence

of agency activities or information they contain, even if the materials are

7

not covered by its current filing or maintenance procedures."  36 C.F.R.

§ 1222.10(b)(6).

The Federal Records Act and implementing regulations further

specify how agencies should make the "judgment" whether particular

categories of materials are "appropriate for preservation."  Under the Act,

each agency head must "establish and maintain an active, continuing

program for the economical and efficient management of records of the

agency."  44 U.S.C. § 3102.  That program must include "safeguards against

the removal or loss of records [the agency head] determines to be necessary

and required by regulations of the Archivist" of the United States.  *Id.*

§ 3105.  The Archivist, in turn, must "provide guidance and assistance to

Federal agencies with respect to ensuring adequate and proper

documentation of the policies and transactions of the Federal Government

and ensuring proper records disposition."  *Id.* § 2904(a); *see also id.* § 2904(c)

(requiring Archivist and Administrator of General Services to "promulgate

standards, procedures, and guidelines with respect to records

management").

The Federal Records Act contains no private right of action, although

certain agency actions may be subject to challenge under the

Administrative Procedure Act.  *See Kissinger v. Reporters Committee for*

*Freedom of the Press*, 445 U.S. 136 (1980); *Armstrong v. Bush*, 924 F.2d 282

(D.C. Cir. 1991).

**B.    FACTUAL BACKGROUND.**

1.  "The Attorney General's Honors Program . . . is the exclusive

means by which DOJ hires recent law school graduates and judicial law

clerks who have no prior legal experience."  MTD Op. 3 [JA 273].  Several

DOJ components participate in Honors Program.  Although the process is

overseen by the Department's Office of Attorney Recruitment and

Management, each component hires its own Honors Program attorneys.  *Id.*

In 2002, the Department created a Screening Committee "to review

and approve the candidates who were selected for interviews by the

components."  *Id.* at 4 [JA 274].  The Screening Committee was given

authority to remove or "deselect" candidates from the list of interviewees.

*Id.*

The events at issue here took place in 2006.  In that year, the

Screening Committee consisted of Michael Elston, the Deputy Attorney

General's Chief of Staff; Daniel Fridman, an Assistant U.S. Attorney on

detail to the Deputy Attorney General's office; and Esther Slater McDonald,

9

a Counsel to the Associate Attorney General. SJ Op. 4 [JA 592]. Several of the Department's components complained that the Screening Committee's review was protracted and that an "unusually large number of seemingly qualified Honors Program . . . candidates . . . were deselected for interviews." MTD Op. 4 [JA 274]. In April 2007, "A Group of Concerned Department of Justice Employees" sent a letter to Members of Congress, stating "that a number of highly qualified candidates, who had been selected for interviews by career employees within the individual DOJ components, had been subsequently rejected by the Screening Committee on the basis of their Democratic Party or liberal affiliations." *Id.*

In June 2008, the Department's Office of Inspector General (OIG) and Office of Professional Responsibility (OPR) issued a joint report, which confirmed that the process had been marred by significant improprieties. It concluded that "two members of the 2006 Screening Committee, Esther McDonald and Michael Elston, took political and ideological affiliations into account in deselecting candidates for Honors Program . . . interviews." *Id.* at 5 [JA 275]. The report also concluded that the Committee's third member, Daniel Fridman, "acted appropriately under the circumstances." OIG/OPR Report 92 [JA 240].

10

Of particular relevance to the claims at issue here, the Report concluded that "McDonald conducted Internet searches regarding candidates' political and ideological affiliations, printed out such information when it revealed liberal associations and then attached the printouts and her own handwritten comments to the candidates' applications in support of her recommendations to deselect them."  MTD Op. 5 [JA 275].  After the Screening Committee's work was completed, "[b]ecause these documents existed only in hard copy, occupied substantial storage space and contained personal information about the applicants, they were placed in a 'burn box' and destroyed prior to the initiation of the OIG/OPR investigation."  *Id.*

## C.    PRIOR PROCEEDINGS.

1.  Plaintiffs initiated this action shortly after release of the OIG/OPR report.  In addition to the claims at issue here, the complaint initially asserted constitutional claims against individual defendants and claims against the Department of Justice under the Constitution, the Civil Service Reform Act, and the Federal Records Act.  The district court dismissed these claims in its September 2009 order, and plaintiffs have not appealed their dismissal.

11

The claims at issue in this appeal arise under the Privacy Act. The gravamen of these claims was that Esther McDonald had created records that should have been irrelevant to the hiring process by printing out information from the Internet, or making written annotations on plaintiffs' applications based on Internet searches, and that these records had resulted in their removal from the interviewee pool.

In its September 2009 order, the district court dismissed claims under subsections (e)(1), (e)(2), (e)(6), and (e)(9) of the Privacy Act, which place various restrictions on the collection, maintenance, and dissemination of records pertaining to individuals. *See* 5 U.S.C. § 552a(e)(1), (2), (6), (9). The district court explained that these sections "only apply to records that are contained within a 'system of records,'" MTD Op. 23 [JA 293] (citing *Maydak*, 363 F.3d at 518), and that plaintiffs had not alleged that the records at issue in this case were ever "actually incorporated into a 'system of records,'" *id.* at 24 [JA 294]. The court refused to dismiss claims under subsection (e)(5) and subsection (e)(7) of the Privacy Act, however, because those subsections apply to records whether or not they are contained within a system of records. *See id.* at 18 [JA 288] (citing *Albright*, 631 F.2d at

12

916–17) (subsection (e)(7)); *id.* at 22 n.10 [JA 292 n.10] (citing *McCready*, 465 F.3d at 12) (subsection (e)(5)).[1]

Following discovery, both sides filed dispositive motions, and the court granted summary judgment for the government on plaintiffs' remaining Privacy Act claims. To prevail in this case, plaintiffs would need to show that the Screening Committee had, in fact, created inappropriate records with respect to one or more of the plaintiffs. And because the Privacy Act requires plaintiffs to show that they suffered actual damages, it would also be necessary to show that consideration of these records was the cause of plaintiffs' removal from the interviewee pool. The district court concluded that plaintiffs had not provided sufficient evidence to satisfy their burden of production on these issues.

The court noted that a search of McDonald's computer produced evidence of Internet searches that McDonald performed regarding several applicants, including two of the plaintiffs—Matthew Faiella and Daniel

---

[1] After ruling on the motion to dismiss, the district court denied plaintiffs' motion for class certification on the ground that it was not timely filed under the applicable local rule. *See* Class Certification Op. [JA 327]. Plaintiffs filed a petition for interlocutory review of the class certification denial under Rule 23(f), which this Court denied. *See* Order, No. 10–8003 [JA 388].

Herber.  SJ Op. 15 [JA 603].   (There was no evidence of a search relating to the third plaintiff, James Saul.  *Id.*)  The court stressed, however, that the evidence did not "reveal whether Ms. McDonald created print-outs or annotations regarding these two plaintiffs," *id.* at 16 [JA 604], and thus did not reveal whether the Privacy Act was violated.

The court also held that plaintiffs would not be able to demonstrate that consideration of such records, if they existed, would have been the cause for their "deselection."  Information on the face of plaintiffs' application could have provided grounds—legitimate or illegitimate—for removing them from the interviewee pool without reference to information provided by other sources.  Plaintiffs provided no evidence to refute the government's contention, which the district court deemed plausible, that they had been deselected based on information that appeared on the face of their applications.  The court explained that "[t]his is not a situation of a conflict (or genuine dispute) as to the facts, but rather one of a paucity of proof by plaintiffs on their Privacy Act claims, on which they have the burden of proof and hence the burden of producing adequate evidence now."  *Id.* at 33 [JA 621].

14

The court rejected plaintiffs' assertion that they were entitled to a spoliation inference because the Screening Committee, at the close of the Committee's deliberations, had destroyed the copies of applications upon which McDonald had made notations. The court explained that the Department of Justice had not determined that such materials were records that were appropriate for preservation. The Department had created a records disposition schedule in 1981 for Honors Program Applications, which "calls for 'application materials,' including a 'four page DOJ application and law school transcript' and other '[o]ptional materials' (such as resumes) to be preserved for one year." SJ Op. 23 [JA 611] (quoting Records Disposition Schedule [JA 565]). Although the creation of a records disposition schedule makes clear that the Department considered the applications themselves to be records appropriate for preservation (albeit only for one year), the Department did not see any need to create a records disposition schedule for employees' notes regarding an application.

The court concluded that "[i]f a Department employee had destroyed agency materials in violation of a records disposition schedule, that destruction would likely warrant a spoliation inference." SJ Op. 25 [JA 613]. A spoliation inference also might be appropriate, in the district

15

court's view, "if the Attorney General had simply ignored his duties under

the Federal Records Act to decide which Honors Program materials are

'appropriate for preservation.'" *Id.* at 26 [JA 614]. But here, "the Justice

Department, in accordance with the FRA, made a records disposition

decision with respect to Honors Program materials; the materials sought by

plaintiffs were simply outside the bounds of the applicable records

disposition schedule." *Id.* The court concluded that "where, as in the

present case, an agency has made a policy decision about the disposition of

certain materials under the FRA, action taken in compliance with that

policy does not warrant a spoliation inference." *Id.* at 28 [JA 616].

## SUMMARY OF ARGUMENT

As the district court repeatedly stressed, it is common ground that

members of the Screening Committee acted improperly in considering

evidence of political or ideological activities in making decisions in the

2006 Honors Program hiring process. After their conduct came to light, the

Department transferred control of the Screening Committee from political

appointees to career employees, and, in 2008, then-Attorney General

Mukasey invited all the 2006 Honors Program applicants who had been

removed from the interviewee pool to interview for an Honors Program position.

The issue presented here is not whether the Screening Committee acted properly, but whether plaintiffs can meet their burden of showing that the Committee created irrelevant records and that consideration of those records caused their removal from the interviewee pool. Only such evidence could establish a claim under the Privacy Act.

Plaintiffs did not produce evidence that such records were created as to them, as opposed to other Honors Program applicants, or that such records were relied upon in removing them from the interviewee pool. The district court properly granted summary judgment to the government based on the absence of evidence on these crucial elements of plaintiffs' case.

Plaintiffs do not dispute that they failed to present evidence specific to their claims. Instead, they urge that they should be excused from coming forward with such evidence because the Screening Committee, upon completion of the hiring process, destroyed the materials it had reviewed. As the district court explained, the Department of Justice has not determined that the materials at issue in this case are appropriate for

17

preservation.  The district court properly rejected plaintiffs' attempt to obtain dispositive spoliation sanctions for the destruction of materials in accordance with the Department's preservation policies.

The district court also properly granted the government's motion to dismiss as to plaintiffs' claims under other subsections of the Privacy Act. Those subsections apply only to materials maintained in a system of records, which the materials at issue here were not.  In urging reversal, plaintiffs fail to come to grips with binding precedent from this Court on this precise issue.

## STANDARD OF REVIEW

The district court's grant of summary judgment and of the government's motion to dismiss are reviewed *de novo*.  *Winder v. Erste*, 566 F.3d 209, 213 (D.C. Cir. 2009).  The district court's determination regarding spoliation sanctions is reviewed for abuse of discretion.  *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998).

# ARGUMENT

I.  **THE RECORD DOES NOT DEMONSTRATE THAT THE DEPARTMENT CREATED RECORDS REFLECTING PLAINTIFFS' EXERCISE OF THEIR FIRST AMENDMENT RIGHTS, OR THAT CONSIDERATION OF SUCH RECORDS WOULD HAVE BEEN THE CAUSE OF THEIR INJURIES.**

## A.  Plaintiffs have not offered evidence that improper records were created as to them, or that any record caused actual damages.

The general conduct of the Screening Committee in 2006 is set out fully in the joint report of the Office of Inspector General and the Office of Professional Responsibility, and in the district court's opinions. Plaintiffs applied for employment under the Attorney General's Honors Program in 2006 and were initially selected to be interviewed by component divisions. Plainitffs were removed from the interviewee pool by the three-person Screening Committee that consisted of Michael Elston, Daniel Fridman, and Esther McDonald.  *See* SJ Op. 4 [JA 592].

Under the committee's informal protocol, "McDonald first reviewed the applications of those candidates who were selected for interviews by DOJ components."  *Id.*  In some cases, McDonald performed Internet searches that revealed information that should have been irrelevant to the hiring process, including information regarding the applicants' First Amendment activities.  "Ms. McDonald made notations on applications

19

reflecting her impressions of the content of the applications as well as information found on the Internet," and also "attached print-outs of certain Internet search results to some applications." *Id.* After McDonald "separated the applications into categories based on whether she thought each candidate should be 'deselected' from the interview list," she sent the applications along to Fridman, who "separated the applications into similar categories." *Id.* Fridman then sent the applications to Elston, "who separated the applications into final categories indicating which candidates were deselected from interviews." *Id.*

As the district court explained, McDonald's Internet searches, however improper, did not in themselves violate the Privacy Act: "[p]erforming Internet searches on the plaintiffs would not in and of itself constitute a Privacy Act violation, even if the searches were related to plaintiffs' First Amendment activities." *Id.* at 13 [JA 601]. Rather, "a 'record' (such as a written annotation or print-out) must have been created from an Internet search in order to implicate the Act." *Id.* at 14 [JA 602]. McDonald "testified (and plaintiffs have not disputed) that she only annotated files or made print-outs for 'some' candidates on whom she performed searches." *Id.* at 31 [JA 619].

20

To the extent that McDonald did create annotations or printouts as to a particular individual, plaintiffs urge that she thereby violated subsection (e)(7) of the Privacy Act, which limits an agency's authority to maintain records relating to First Amendment activity, or subsection (e)(5), which requires records used in making a determination to be sufficiently "relevan[t] . . . to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5), (e)(7). To prevail on a claim for damages based on such violations, plaintiffs would also need to show that a Privacy Act violation caused them to suffer "actual damages." *Id.* § 552a(g)(4)(A); *Doe v. Chao*, 540 U.S. 614 (2004).

As the district court concluded, plaintiffs cannot show that McDonald created printouts regarding their First Amendment activities and cannot demonstrate that creation of such records would have been the basis for their removal from the interviewee pool. Plaintiffs have identified two types of records that McDonald created in the course of reviewing applications. First, in certain instances, which McDonald described as "rare," she printed out material from an Internet search and attached it to the application. McDonald Dep. 288 [JA 521]; *see also* Elston Dep. 65 [JA 523] (describing number of documents Elston saw with attached

21

printouts from the Internet as "a very small number," probably "under ten"). Second, McDonald sometimes made handwritten notations on applications. Plaintiffs do not dispute that "[m]any of the notations that McDonald made on the copies of 2006 Honors Program applications regarded information already provided by the applicant," rather than material gleaned from the Internet. Def.'s Statement of Material Facts Not in Dispute, at 8, Statement 17 [JA 503]; Pls.' Counterstatement of Material Facts, at 2, Statements 16–18 [JA 531] ("Not disputed.").

As the district court explained, the record does not reveal whether McDonald created records as to these particular plaintiffs. The only relevant evidence plaintiffs provided was their own application materials, information about them that was available on the Internet, and the outcome of the Screening Committee's review. SJ Op. 31 [JA 619].[2] None

---

[2] The district court noted that plaintiff James Saul was treated in an "unusual" manner, as "he was originally accepted for an interview with DOJ's Environmental and Natural Resources Division but was ultimately instead scheduled for an interview with the Civil Division, apparently due to the intervention of the Screening Committee." SJ Op. 17 [JA 605]. The district court appropriately rejected any implication from these facts that the Screening Committee relied on improperly created records, rather than information on the face of Saul's application, "especially given that Mr. Saul's application itself contained environmental affiliations and no

of these sources provides any indication whether records based on Internet searches were created in connection with plaintiffs' applications in particular.

Plaintiffs also made no attempt to demonstrate that inappropriate records, if they existed, caused them to be denied employment with the Department of Justice. As the district court explained, they provided no basis for rejecting the government's "plausible arguments why the Screening Committee could have rejected each of the three applications on its face," without reliance on any inappropriate record. SJ Op. 32 [JA 620].

These reasons include legitimate considerations. For example, although plaintiff Daniel Herber's transcript could be read to indicate that he was in the bottom half of his law school class, his application asserted that he was in the top half. *See* Herber Dep. 65–66 [JA 527]. Similarly, a reviewer could legitimately note that plaintiff Matthew Faiella's application contained several typographical errors. *See* Faiella Dep. 37–38 [JA 529]. There is no dispute that these factors were considered by the Screening Committee; in fact, the OIG/OPR Report indicates that one of

---

evidence exists suggesting that an Internet search was even performed on Mr. Saul." *See id.* at 32 [JA 620].

23

the Committee's three members, Daniel Fridman, based his evaluations

solely on appropriate criteria such as "grades, writing style, personal

history as reflected in the essay answers, and work experience."  OIG/OPR

Report 73 [JA 221]; *see also id.* at 79 [JA 227] (noting that McDonald

considered "academic records and sloppiness of applications").

Even insofar as the committee members based their evaluation of

plaintiffs on improper factors, they could have done so without creation or

consideration of new records.  "Each of the three named plaintiffs listed

information on their applications that the OIG/OPR Report later described

as liberal."  Def.'s Statement of Material Facts Not in Dispute, at 10,

Statement 32 [JA 505]; Pls.' Counterstatement of Material Facts, at 3,

Statement 32 [JA 532] ("Not disputed."); *see, e.g.*, Herber Tr. 40–41 [JA 525–

26] (noting work for environmental organization); OIG/OPR Report 107–08

[JA 255–56] (characterizing that organization as "liberal"); OIG/OPR

Report 86 [JA 234] (discussing Saul's affiliation with environmental

groups).  Removing an applicant from consideration on the basis of such

information would of course be improper.  But plaintiffs' legal claim

concerns specific provisions of the Privacy Act that are implicated not

merely by consideration of improper factors but by the creation of records.

24

*See* SJ Op. 14 [JA 602]. "Given conflicting, plausible accounts" of the basis for plaintiffs' deselection—"as to which neither side relies on evidence, as opposed to conjecture—the plaintiff, as the party with the burden of proof, must produce further probative evidence in support of its claims." SJ Op. 32–33 [JA 620–21].[3]

Demonstrating that plaintiffs experienced an injury resulting from maintenance of an inappropriate record is critical if a court is to avoid tension between the Privacy Act remedy and the comprehensive remedial scheme of the Civil Service Reform Act, which generally "deprives the district court of jurisdiction to review prohibited personnel practices." *Hubbard v. EPA*, 809 F.2d 1, 5 (D.C. Cir. 1986). In *Hubbard*, this Court explained that "the Privacy Act permits a federal job applicant to recover damages for an adverse personnel action *actually caused* by an inaccurate or incomplete record. But the obvious need to accommodate the two statutory schemes requires the district courts to analyze the asserted

---

[3] Plaintiffs would face additional proof problems even if they could establish that they had been deselected on the basis of the printouts, such as demonstrating that, if interviewed, they would have ultimately been hired, and demonstrating that the government's conduct was willful. *See* SJ Op. 15 n.3 [JA 603 n.3].

causation link to be certain they are not exceeding their jurisdiction." *Id.*

This Court thus rejected a Privacy Act claim based on the creation of an

ostensibly inaccurate record in the absence of the requisite causal link.

Plaintiffs here have similarly not demonstrated, regardless of the propriety

of plaintiffs' deselection, that any Privacy Act violation caused them injury.

Summary judgment for the government was therefore warranted.

### B. The destruction of certain materials at the conclusion of the hiring process does not give rise to any sanction, much less a dispositive one.

Plaintiffs do not take issue with the district court's analysis of the

available evidence.  They argue instead that the government improperly

destroyed the copies of their applications that had been reviewed by the

Screening Committee, and that the destruction of these materials gives rise

to an adverse inference that would allow them to prevail on their Privacy

Act claims.  The district court correctly concluded otherwise.

#### 1. *No sanction is warranted, much less a dispositive one, in the absence of any determination that these materials must be preserved.*

"In order for an adverse inference to arise from the destruction of

evidence, the party having control over the evidence must have had an

obligation to preserve it at the time it was destroyed."  *Kronisch v. United*

26

*States*, 150 F.3d 112, 126 (2d Cir. 1998). "The evidentiary rationale [for adverse inferences] derives from the common sense notion that a party's destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction." *Id.* In such circumstances, an adverse inference may operate to restore the opposing party "to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.*

Here, the Screening Committee was authorized to destroy the materials when it no longer needed them. Moreover, even if there were an obligation under a general open-government statute like the Federal Records Act, it would not be premised on a "reason to believe" that covered documents "may be used against [the government] in litigation." *Id.* Plaintiffs are therefore not entitled to any adverse inference. And even if an adverse inference were warranted, it could not possibly justify excusing plaintiffs entirely from their burden of proving their case.

As the district court explained, and plaintiffs do not dispute, no statute, regulation, or agency policy specifically required the maintenance of the materials (*e.g.*, notes and annotations) at issue here. The only

27

document that addressed the retention or destruction of materials related to Honors Program hiring was a disposition schedule that governed only "application materials." SJ Op. 23 [JA 611] (citing Records Disposition Schedule [JA 565]). There is no dispute that the Department complied with this disposition schedule by retaining plaintiffs' application materials for at least one year. *See* Def.'s Statement of Material Facts Not in Dispute, at 7, Statement 9 [JA 502]; Pls.' Counterstatement of Material Facts, at 2, Statements 2–9 [JA 531] (not disputed).

Other materials, such as copies of applications, with or without notes or annotations made by Department employees, were considered "non-record" by the Department and thus could be disposed of when no longer needed. Here, once the Committee's work was done, there was no need to retain those materials, particularly because they contained personal information about the applicants. *See* OIG/OPR Report 68–69 [JA 216–17]; SJ Op. 19 [JA 607]. These copies were therefore destroyed.

Moreover, even if the government were under some obligation to retain additional copies of plaintiffs' applications, plaintiffs could not justify a sanction that would entirely excuse them from proving their case based on the available evidence. In *Webb v. District of Columbia*, 146 F.3d

28

964 (D.C. Cir. 1998), on which plaintiffs seek to rely, this Court emphasized that "disposition of cases on the merits is generally favored," and thus stressed "the drastic nature of a default judgment, which deprives a party completely of its day in court." *Id.* at 971. Plaintiffs' request for a "dispositive sanction," Appellants' Br. 44, runs headlong into that principle.

The facts of *Webb* underscore the inappropriateness of such a drastic remedy in this case. In *Webb*, the defendant in an employment discrimination case had destroyed certain personnel records, including "merit case files" that included all the relevant paperwork relating to the selection process for a position for which plaintiff had applied. *Id.* at 968 & n.6. There, unlike here, it was not disputed that this destruction violated the applicable regulations, nor was it disputed that some sanction was appropriate. *Id.* at 970–71.

This Court nonetheless vacated the district court's default judgment in favor of the plaintiff and remanded for consideration of alternative sanctions. *Id.* at 972. As this Court explained, the plaintiff had other mechanisms to "discover any helpful evidence pointing toward the conclusion that his nonselection was discriminatory," based on, for

29

example, the personnel file of the person who was selected and the names of the individuals who participated in the selection process. *Id.* at 974. The Court specifically noted that "to the extent that the documents would have shown that [the plaintiff's] own qualifications were incorrectly evaluated by the Office of Personnel, [the plaintiff could] make that case independently through deposing Office of Personnel workers and asking them to explain the process for scoring qualifications." *Id.*

Although plaintiffs here had ample discovery opportunities, they declined to ask the members of the Screening Committee whether they recalled reviewing any materials attached to the applications of the three plaintiffs. Plaintiffs deposed Esther McDonald, and could have asked her to review their applications and indicate whether she recalled them and whether she had printed out information regarding their activities or made annotations based on Internet searches. Plaintiffs declined to ask such questions even though McDonald repeatedly made clear that she might recall the basis for a candidate's deselection if she had an opportunity to review the candidate's application. *See, e.g.*, McDonald Dep. 181 [JA 517] ("If you would like to present me with applications, I may remember somebody . . . ."); *id.* at 195 [JA 519] ("It is possible that if I saw names and

30

applications that I might remember something.").  Instead, plaintiffs'

counsel went to great lengths to establish that McDonald could not recall

his clients' applications *without* reviewing any materials to refresh her

memory.  *See id.* at 181 [JA 517] (plaintiffs' counsel stating that "I'm

certainly not intending to present you with any additional applications");

*id.* at 189–99 [JA 518–20] (repeated testimony that McDonald could not

remember details of applications without being presented with the

applications or the names of the applicants).

　　Plaintiffs also deposed Michael Elston.  When Elston was interviewed

by the OIG/OPR investigators, he was asked to give his reactions to the

applications of several candidates.  In some cases, Elston identified items

on the face of the candidate's application that would have caused him to

vote to deselect the candidate.  *See, e.g.*, OIG/OPR Report 85 [JA 233]

(candidate's essay); *id.* at 86 [JA 234] (same); *id.* at 87 [JA 235] (same).  In

other cases, he was unsure why the candidate was deselected.  *See id.* at 85

[JA 233] ("did not recall"); *id.* at 86 [JA 234] ("believed he would have been

enthusiastic").  In his deposition, however, Elston was not asked to review

the applications of any of the plaintiffs.

31

The OIG/OPR investigators also followed a similar procedure with regard to Daniel Fridman. Although Fridman "could not specifically recall individual candidates, he explained whether he would have voted yes or no for a candidate based on the candidate's academic record and other credentials." OIG/OPR Report 74 [JA 222]. Plaintiffs, however, chose not to take Fridman's deposition.

Plaintiffs also declined to rely on actual evidence of Internet searches performed by Esther McDonald. In discovery, the Department of Justice produced logs of Internet searches performed on McDonald's computer, which indicated that she had performed searches relating to Daniel Herber and Matthew Faiella, but not relating to James Saul. *See* SJ Op. 15–16 [JA 603–04]. These logs substantially fill the evidentiary gap from the copies of applications that were not retained.[4] Plaintiffs could have used the applications, which were retained, along with the logs of searches, to explore with the decisionmakers (all of whom were available for

_____

[4] Although plaintiffs asserted in the district court that McDonald may have conducted additional searches on her home computer, *see* SJ Op. 16 [JA 604], they provided no support for that speculation, despite the fact that they could easily have asked her in deposition whether that was the case.

32

deposition) the critical factual questions in this case: whether records were created based on Internet searches, and if so, whether those records as opposed to some other factor or set of factors caused them not to be offered positions with the Department of Justice.

But plaintiffs did not attempt to illuminate the facts of their case. And they now seek to rely instead on an adverse inference based on the lack of retention of certain documents.  Plaintiffs underscore the extraordinary nature of their position by insisting that they are entitled to summary judgment even as to James Saul, as to whom there is no record of any Internet searches performed by McDonald.  *See* SJ Op. 15–16 [JA 603–04].  Plaintiffs thus make clear that their position is that regardless of the actual evidence that was available to them, or to the government, the failure to retain certain records entitles them to judgment without the need to prove causation in their individual case.  That position is plainly mistaken.

## 2. *The Federal Records Act does not authorize any adverse inference.*

As noted above, there was no specific directive for the Department to retain any of the materials at issue here, as the relevant disposition

schedule concerned only plaintiffs' applications.  Plaintiffs urge, however, that under the Federal Records Act the Department should have compelled the retention of additional materials, and that plaintiffs should be entitled to a spoliation inference on that basis.  That assertion misunderstands the operation of the Federal Records Act.

The Federal Records Act defines "records" to include only documents "preserved or appropriate for preservation . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them."  44 U.S.C. § 3301.  The applicable regulations define records that are "appropriate for preservation" to be materials "which, in the judgment of the agency, should be filed, stored, or otherwise systematically maintained by an agency because of the evidence of agency activities or information they contain, even if the materials are not covered by its current filing or maintenance procedures."  36 C.F.R. § 1222.10(b)(6).

Federal agencies are thus charged with making a "judgment" about which materials should be retained.  The Department of Justice has not determined that an employee's notes about an unsuccessful applicant are records that must be retained.  Rather, at the time of the events at issue in

34

this case, the only materials regarding unsuccessful applicants that the Department had determined must be retained were the applications themselves, which were to be retained for one year.  *See* SJ Op. 22–23 [JA 610–11].

Plaintiffs attempt in this litigation to challenge the Department's judgment regarding the appropriate preservation policy.  Requiring district courts to impose adverse inferences whenever they disagree with a government official's interpretation of the broadly worded provisions of the Federal Records Act would unravel the administrative scheme for determining which documents must be preserved and for how long.  The Act and implementing regulations assign to the relevant agency and the Archivist of the United States the responsibility for determining which materials should be preserved.  Under plaintiffs' proposed regime, government officials would be compelled to preserve even documents that their agency's policy authorizes to be destroyed, lest a district court later disagree with the agency's determination and impose sanctions with severe costs to the government (including, in cases like this one, monetary damages).

35

Plaintiffs offer no precedent for their preferred approach to the Federal Records Act.  To the contrary, the relevant case law makes clear that private plaintiffs may not circumvent the administrative scheme for record preservation by going straight to district court.  In *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980), the Supreme Court rejected a plaintiff's attempt to assert a private right of action under the Federal Records Act.  As the Court explained, regardless of whether the defendant in that case had engaged in the unauthorized removal of agency records, "Congress has not vested federal courts with jurisdiction to adjudicate that question upon suit by a private party."  *Id.* at 149–50.  To the contrary, "[t]hat responsibility is vested in the administrative authorities."  *Id.* at 150.

The Supreme Court left open the question whether a private party could challenge an agency's recordkeeping practices under the Administrative Procedure Act.  *See id.* at 150 n.5.  This court has subsequently held that courts may not review agency compliance with recordkeeping guidelines.  *Armstrong v. Bush*, 924 F.2d 282, 294 (D.C. Cir. 1991).  Rather, if a plaintiff believes that an individual government official has failed to comply with recordkeeping guidelines, "the FRA contains a

36

prescribed method of action . . . : it requires the agency head, in the first instance, and then the Archivist to request that the Attorney General initiate an action to prevent the destruction of documents, thereby precluding private litigants from suing directly to enjoin agency actions in contravention of agency guidelines." *Id.* Judicial review is permitted under the Administrative Procedure Act only to contest "the agency head's or Archivist's refusal to seek the initiation of an enforcement action by the Attorney General," *id.* at 295, or to directly challenge an agency's "recordkeeping guidelines and directives" on the ground that they "are inadequate because they permit the destruction of 'records' that must be preserved under the FRA," *id.* at 291.

Based on these precedents, there is no basis for suggesting that plaintiffs may obtain an adverse inference in litigation because an individual government official has not complied with plaintiffs' conception of the Federal Records Act. If plaintiffs wish to challenge the adequacy of the recordkeeping guidelines, under certain circumstances they may do so on a prospective basis under the APA. And if they believe those guidelines have not been followed, they may request that the Archivist take appropriate action, and seek review if no such action is taken. They may

37

not short-circuit the whole process by demanding, in the context of a claim

for money damages, a retrospective examination of whether individual

employees, who have concededly complied with applicable agency

guidelines, violated the guidelines that plaintiffs believe should have been

in place.

Plaintiffs' challenge to the Department's preservation policy is also

substantively flawed. Plaintiffs' position is premised on their view that the

regulatory treatment of "working papers" operates in tension with, rather

than in concert with, all other provisions of the Federal Records Act and

applicable regulations. The regulations relating to "working files" state

that

> Working files, such as preliminary drafts and rough notes, and
> other similar materials, are records that must be maintained to
> ensure adequate and proper documentation if:
>
> (1) They were circulated or made available to employees, other
> than the creator, for official purposes such as approval,
> comment, action, recommendation, follow-up, or to
> communicate with agency staff about agency business; and
>
> (2) They contain unique information, such as substantive
> annotations or comments *that adds to a proper understanding of
> the agency's formulation and execution of basic policies, decisions,
> actions, or responsibilities*.

36 C.F.R. § 1222.12(c) (emphasis added).  As the district court recognized, this regulation itself contains limiting language that echoes the generally applicable language of the Federal Records Act: agencies must retain working papers as records only if they "contain unique information . . . that adds to a proper understanding of the agency's formulation and execution of basic policies, decisions, actions, or responsibilities," *id.*, just as agencies must retain other records that are "appropriate for preservation . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them," 44 U.S.C. § 3301.  *See* SJ Op. 27 [JA 615] ("This regulation can only be interpreted as a directive to agency heads that these type of materials *would* be 'appropriate for preservation' *if* they add to a 'proper understanding' of agency decision-making.").

Plaintiffs make no effort to analyze whether the information contained in the materials at issue here was sufficiently probative of the agency's basic functions to satisfy the regulatory or statutory standard. Instead, they simply assert, without analysis, that the materials at issue here "were required to be preserved rather than automatically destroyed from the moment that they became the 'working papers' of the Justice

39

Department's Honors Program Screening Committee."  Appellants' Br. 32.

Plaintiffs thus ignore the need for the Department of Justice, with the

assistance of the Archivist, to make a judgment call "regarding whether

preserving informal deliberation records would contribute to a 'proper

understanding' of how Honors Program decisions were made."  SJ Op. 27–

28 [JA 615–16].  As the district court explained, while "[o]ne can argue

about whether or not DOJ made the right judgment[,] . . . it is nonetheless

true that this regulation does not directly apply to the materials in

question."  *Id.*  Plaintiffs offer no response, instead reading the regulation

as if every working paper must be retained.

　　Plaintiffs fare no better in suggesting that the Department's

determination regarding which materials must be retained was inadequate

merely because the relevant records disposition schedule was issued in

1981.  Appellants' Br. 35–37.  Plaintiffs have no greater right to challenge

the Department's preservation policy based on its age than based on any

other attribute.  Moreover, as the district court explained, after the events at

issue in this case the Department updated the disposition schedule to

include additional "information about the applicant's movement through

the Honors Program application process."  SJ Op. 23 [JA 611].  Although

40

the Department has thus recently revisited the question of which materials

should be retained as records, it still does not contemplate retention of an

individual employee's notes about a candidate.  It therefore does not

appear that the materials at issue here would be preserved even under the

new policy, which further belies plaintiffs' contention that the district court

erred by relying on "an *un-updated* disposition schedule."  Appellants' Br.

37.

Plaintiffs underscore the error in their analysis by seeking to rely on

*Talavera v. Shah*, 638 F.3d 303 (D.C. Cir. 2011).  There, this Court considered

whether spoliation sanctions were appropriate in light of an acknowledged

violation of two separate sets of regulations that required certain records to

be maintained to ensure adequate documentation for employees who

present complaints.  *See id.* at 312 (citing 5 C.F.R. § 335.103(b)(5) (OPM

regulation that "pertains to grievances of promotion decisions"); 29 C.F.R.

§ 1602.14 (EEOC regulation that "pertains to employees who file Title VII

complaints")).  The presence of regulations prohibiting the destruction of

the documents at issue was central to this Court's reasoning in *Talavera*,

and this Court presented no other basis on which a spoliation sanction

would be warranted.  *See id.* at 311–12.

41

Here, unlike in *Talavera*, no regulation requires that documents of the type at issue here be retained, much less a regulation designed to preserve documents for administrative complaints or litigation. Given that no regulation or policy required that the materials at issue here be preserved, the district court correctly concluded that *Talavera* is inapposite. Plaintiffs offer no basis for describing that conclusion as "so unrealistic as to risk being seen as specious." Appellants' Br. 46.

### 3. *Plaintiffs' other asserted bases for a spoliation inference are mistaken.*

Plaintiffs are similarly wide of the mark in urging that a preservation duty was triggered by the possibility of administrative proceedings or litigation surrounding Honors Program hiring. Although plaintiffs criticize the district court for not explicitly discussing this line of reasoning, *see* Appellants' Br. 39, there were two ample reasons for the district court to focus on other issues: plaintiffs expressly waived the argument, and it is plainly without merit.

At the summary judgment hearing, plaintiffs' counsel urged that a spoliation sanction was warranted because there was "a duty to maintain that was breached. A duty, by the way, *that has nothing to do with whether*

42

*litigation was pending then or upcoming*, but a basic duty that would be breached, a duty that all agencies have to maintain records under the Federal Records Act."  SJ Hearing 82 [JA 548] (emphasis added).

Plaintiffs' concession on this point was unsurprising given that the timing of the destruction of the records made clear that no litigation-related preservation duty had arisen.  The first inquiry regarding Honors Program hiring did not come to the Department of Justice until April 2007.  *See* MTD Op. 4 [JA 274].  There is no dispute that the documents had long been destroyed by then.  *See* Def.'s Statement of Material Facts Not in Dispute, at 9–10, Statement 27 [JA 504–05] (asserting documents destroyed "either in November 2006 or early 2007"); Pls.' Counterstatement of Material Facts, at 2, Statement 27 [JA 531] (noting point was "[n]ot disputed," and adding that "[p]laintiffs do not doubt that the records were destroyed at Mr. Elston's behest before the end of 2006").  And even the April 2007 inquiry did not contemplate or threaten litigation.  In light of plaintiffs' explicit concession and the evident and undisputed factual hole in plaintiffs'

argument, the district court understandably saw no need to discuss the matter. [5]

Plaintiffs' suggestion that the very nature of the documents somehow gave rise to an obligation to preserve them is likewise flawed. *See* Appellants' Br. 41–43. This argument, too, was waived by counsel's statement at the summary judgment hearing, cited above, and was not resuscitated by an oblique reference in a footnote in plaintiffs' supplemental brief. *See* Pls.' Supp. Br. 7–8 n.11 [JA 574–75 n.11]. And this argument, too, is mistaken. Plaintiffs essentially urge that the challenged conduct itself, rather than any threatened or anticipated litigation, gave rise to an obligation to preserve documents. They provide no authority for this unlikely proposition, and courts have regularly rejected it. *See, e.g., Curcio v. Roosevelt Union Free Sch. Dist.*, Cv. No. 10–5612, 2012 WL 3236645, at *5 (E.D.N.Y. Aug. 10, 2012) ("[J]ust because [a supervisor] was aware or should have known that her statements were racially biased, it does not

---

[5] Although Elston allegedly stated that the destruction of the Screening Committee's files was "*one* thing I did right," that offhand comment falls far short of demonstrating any knowledge at the time of the destruction that litigation was imminent. *See* SJ Op. 19 [JA 607] (quoting McDonald Dep. 261–62 [JA 417] (attributing that statement to Elston)).

mean that she should have anticipated Plaintiff's filing an employment

discrimination action against her that very instant."); *Centrifugal Force, Inc.*

*v. Softnet Commc'n, Inc.*, 783 F. Supp. 2d 736, 746 (S.D.N.Y. 2011) (rejecting

argument "that where a plaintiff alleges that a defendant committed a

tortious act, the defendant has a duty to preserve evidence as of the time

the plaintiff later alleges the tortious act was committed—even in the

absence of any evidence that the defendant believed it committed a tortious

act or otherwise anticipated future litigation").

Nor do plaintiffs advance their argument by suggesting that an

adverse inference was warranted "as a matter of broad equitable

principles."  Appellants' Br. 49.  This contention is premised on the

assertion that the government was under some obligation to retain the

materials at issue here, and that the destruction was therefore wrongful.

As discussed above, plaintiffs have made no such showing, and are

therefore not entitled to any adverse inference.

### C.    Class certification was not warranted.

Although plaintiffs urge that the district court's denial of class

certification should be reversed, their brief advances no argument as to

why the district court erred in denying class certification, instead seeking

to incorporate by reference their petition for interlocutory appeal. *See* Appellants' Br. 55. As we explained in our response to that petition, there was no error: plaintiffs concededly violated a local timing rule regarding the filing of motions for class certification, and the district court neither inadvertently authorized the late filing nor abused its discretion in concluding that the late filing was not the result of excusable neglect. *See* Opp'n to Petition for Permission to Appeal, at 12–20 [JA 369–77].

More fundamentally, plaintiffs' suggestion that class certification would be warranted in this case underscores their refusal to come to grips with the requirements for proving a claim under the Privacy Act. Plaintiffs are quite wrong to suggest that "regardless of the District Court's most recent rulings, there do exist persons who have irrefutable causes of action here." Appellants' Br. 54. Plaintiffs have *not* established that any individual has been adversely affected by the creation or maintenance of any record; doing so would require analyzing the reasons an individual applicant was denied employment, which plaintiffs have studiously declined to do. Plaintiffs have not demonstrated that any applicant was deselected based on the records McDonald created, as there is no evidence that anyone ever relied on those records.

46

Plaintiffs do, however, properly appear to concede that some of the putative class members have *no* cause of action, arguing that the government injured "at least some (*even if not all 170*) members of this case's potential class." *Id.* (emphasis added). Plaintiffs provide no explanation of why the district court should have certified a class in which only a fraction of the class members even arguably have a claim, particularly where plaintiffs offer no mechanism for identifying any meritorious claims that may exist.

## II. THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' REMAINING PRIVACY ACT CLAIMS BECAUSE THE RECORDS AT ISSUE WERE NOT MAINTAINED IN A SYSTEM OF RECORDS.

In addition to the claims based on subsections (e)(5) and (e)(7) of the Privacy Act, discussed above, plaintiffs brought several other claims as to which the district court granted the government's motion to dismiss. Here, plaintiffs only challenge the dismissal of one set of these claims, the claims under other subsections of the Privacy Act. *See* Appellants' Br. 49–53.

Those claims were properly dismissed on the ground that subsections (e)(1), (e)(2), (e)(6), (e)(9), and (e)(10) of the Privacy Act "only apply to records that are contained within a 'system of records.'" MTD Op. 23 [JA 293]. Because plaintiffs do not urge that the records at issue here were

47

contained in a system of records, the district court correctly dismissed their claims based on these subsections.[6]

In *Maydak v. United States*, 363 F.3d 512 (D.C. Cir. 2004), this Court squarely held that "the requirements contained in the interrelated subsections (e)(1), (2), and (3), as well as (e)(10), are triggered only if the records are actually incorporated into a system of records." *Id.* at 518. Plaintiffs offer no explanation for why they characterize the district court's quotation of this Court's holding in *Maydak* as "an undue over-reading of *Maydak*." Appellants' Br. 51.

Contrary to plaintiffs' suggestion, the government has never stated or implied that *Maydak* was wrongly decided in this respect. *See* Appellants' Br. 52. While the government did not dispute, in subsequent proceedings in *Maydak*, that certain materials at issue in that case were in fact

_____

[6] Plaintiffs appear to suggest, in a footnote, that the Department should be faulted for *failing* to transfer the materials at issue here to a system of records. *See* Appellants' Br. 50–51, n.35. The footnote is insufficient to raise any such argument for this Court's review: even if it is read to assert that the government was under an obligation to transfer these materials to a system of records, the footnote provides no explanation of why that would be the case. *See Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc) ("We need not consider cursory arguments made only in a footnote . . . .").

maintained in a system of records, it never retreated from the view that

inclusion in a system of records was a prerequisite for relief under the

Privacy Act provisions at issue.  To the contrary, the second *Maydak*

decision from this Court reiterated that principle, noting that "the extensive

statutory requirements of section 552a(e) of the [Privacy] Act come into

play only with respect to information that is maintained in a 'system of

records.'"  *See Maydak v. United States*, 630 F.3d 166, 178 (D.C. Cir. 2010)

(quoting 5 U.S.C. § 552a(e)).

The government's *Overview of the Privacy Act* likewise correctly

identifies which sections of the Privacy Act apply to records that are not

incorporated into a system of records.  That document correctly notes that

in *Albright v. United States*, 631 F.2d 915, 918–20 (D.C. Cir. 1980), this Court

"held that subsection (e)(7) . . . applies even to records not incorporated

into a system of records," and that in *McCready v. Nicholson*, 465 F.3d 1, 10–

12 (D.C. Cir. 2006), this Court also "held that the terms of subsection

(g)(1)(C)—the judicial remedy provision for subsection (e)(5) violations—

'[do] not incorporate or otherwise refer to the Act's definition of a "system

of records" found in § 552a(a)(5).'"  Department of Justice, *Overview of the*

49

*Privacy Act*, at 40.[7]  The *Overview* then correctly explains that this Court in

*Maydak* "has declined to extend the holding in *Albright*" — that is, the

conclusion that subsection (e)(7) applies even to records that are not

included in a system of records — "to certain other subsections of § 552a(e)."

*Id.* at 41.  There is no basis for plaintiffs' suggestion that the government

has somehow repudiated this Court's holding in *Maydak*.

Nor do plaintiffs offer any argument in favor of distinguishing

subsections (e)(6) and (e)(9) of the Privacy Act from those subsections that

this Court has squarely held apply only to those records that appear in a

system of records.  Any contention to that effect is therefore waived.

In any event, the motion to dismiss was properly granted as to those

subsections.  Subsection (e)(6) is very similar in purpose and function to

subsection (e)(10), which this Court has already held does not apply to

records maintained outside a system of records.  Both provisions relate to

procedures to protect the disclosure of records to the public: subsection

(e)(6) imposes requirements on agencies "prior to disseminating any record

about an individual to any person other than an agency," 5 U.S.C.

---

[7] http://www.justice.gov/opcl/1974privacyact.pdf

§ 552a(e)(6), while subsection (e)(10) requires "appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security," *id.* § 552a(e)(10). Moreover, even if subsection (e)(6) applied to the materials at issue here, plaintiffs have not alleged that those materials were disseminated outside the Department. They have therefore plainly failed to state a claim under subsection (e)(6) for that independent reason, which likewise compels affirmance of the district court's order on this point.

The limitation of subsection (e)(9) to materials maintained in a system of records is even more straightforward. On its face, subsection (e)(9) applies to "rules of conduct for persons involved in the design, development, operation, or maintenance of any *system of records*." 5 U.S.C. § 552a(e)(9) (emphasis added).

*  *  *  *  *

In sum, plaintiffs have failed to meet their burden of coming forward with evidence to support their claims under the Privacy Act. But plaintiffs' inability to prove their Privacy Act claims in no way suggests that they had no recourse if the Department of Justice's determination that they should

51

not be hired through the Honors Program was based on impermissible considerations. To the contrary, plaintiffs had several avenues to seek relief for any allegedly wrongful failure to hire. They declined to pursue claims under the Civil Service Reform Act, other than mistaken claims for declaratory and injunctive relief that were dismissed at an early stage of this litigation. In addition, except where it would be unnecessary or impractical, the Attorney General offered *every* candidate who was deselected by the 2006 Screening Committee, including plaintiffs, an opportunity to interview with the Department of Justice the following year. *See* Willis Decl. ¶ 7 [JA 511–12]. Plaintiffs turned that opportunity down as well, in favor of this Privacy Act lawsuit, which ultimately lacked merit.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should

be affirmed.

Respectfully submitted,

STUART F. DELERY
   *Acting Assistant Attorney General*

RONALD C. MACHEN JR.
   *United States Attorney*

 s/ Daniel Tenny
MARK B. STERN
MICHAEL S. RAAB
DANIEL TENNY
   *(202) 514-1838*
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7215*
   *U.S. Department of Justice*
   *950 Pennsylvania Ave., N.W.*
   *Washington, D.C.  20530*

OCTOBER 2012

53

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)

I certify that this brief complies with the type-volume limitation of

Fed. R. App. P. 32(a)(7)(B).  This brief contains 10,139 words.


 s/ Daniel Tenny
Daniel Tenny

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2012, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court of

Appeals for the District of Columbia Circuit by using the appellate

CM/ECF system.  Participants in the case are registered CM/ECF users

and service will be accomplished by the appellate CM/ECF system.

 s/ Daniel Tenny
Daniel Tenny

**ADDENDUM**

# TABLE OF CONTENTS

## Privacy Act

5 U.S.C. § 552a (excerpts) ....................................................................A1

## Federal Records Act

*Statute*

44 U.S.C. § 2904....................................................................................A7

44 U.S.C. § 2905....................................................................................A8

44 U.S.C. § 3101....................................................................................A9

44 U.S.C. § 3102....................................................................................A9

44 U.S.C. § 3105..................................................................................A10

44 U.S.C. § 3106..................................................................................A10

44 U.S.C. § 3301..................................................................................A11

*Regulations*

36 C.F.R. § 1222.10.............................................................................A12

36 C.F.R. § 1222.12.............................................................................A13

**5 U.S.C. § 552a**

**§ 552a.  Records maintained on individuals**

 . . .

 **(e) Agency requirements.**--Each agency that maintains a system of records shall—

    **(1)** maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President;

    **(2)** collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs;

    **(3)** inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—

        **(A)** the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

        **(B)** the principal purpose or purposes for which the information is intended to be used;

        **(C)** the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and

        **(D)** the effects on him, if any, of not providing all or any part of the requested information;

    **(4)** subject to the provisions of paragraph (11) of this subsection, publish in the Federal Register upon establishment or revision a notice of

the existence and character of the system of records, which notice shall include—

      **(A)** the name and location of the system;

      **(B)** the categories of individuals on whom records are maintained in the system;

      **(C)** the categories of records maintained in the system;

      **(D)** each routine use of the records contained in the system, including the categories of users and the purpose of such use;

      **(E)** the policies and practices of the agency regarding storage, retrievability, access controls, retention, and disposal of the records;

      **(F)** the title and business address of the agency official who is responsible for the system of records;

      **(G)** the agency procedures whereby an individual can be notified at his request if the system of records contains a record pertaining to him;

      **(H)** the agency procedures whereby an individual can be notified at his request how he can gain access to any record pertaining to him contained in the system of records, and how he can contest its content; and

      **(I)** the categories of sources of records in the system;

   **(5)** maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;

   **(6)** prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes;

**(7)** maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity;

**(8)** make reasonable efforts to serve notice on an individual when any record on such individual is made available to any person under compulsory legal process when such process becomes a matter of public record;

**(9)** establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for noncompliance;

**(10)** establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained;

**(11)** at least 30 days prior to publication of information under paragraph (4)(D) of this subsection, publish in the Federal Register notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency; and

**(12)** if such agency is a recipient agency or a source agency in a matching program with a non-Federal agency, with respect to any establishment or revision of a matching program, at least 30 days prior to conducting such program, publish in the Federal Register notice of such establishment or revision.

. . .

A3

**(g)**    **(1) Civil remedies.**--Whenever any agency

> **(A)** makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

> **(B)** refuses to comply with an individual request under subsection (d)(1) of this section;

> **(C)** fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

> **(D)** fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

**(2)**    **(A)** In any suit brought under the provisions of subsection (g)(1)(A) of this section, the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct. In such a case the court shall determine the matter de novo.

> **(B)** The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed.

**(3)    (A)** In any suit brought under the provisions of subsection (g)(1)(B) of this section, the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him. In such a case the court shall determine the matter de novo, and may examine the contents of any agency records in camera to determine whether the records or any portion thereof may be withheld under any of the exemptions set forth in subsection (k) of this section, and the burden is on the agency to sustain its action.

**(B)** The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed.

**(4)** In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of--

**(A)** actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

**(B)** the costs of the action together with reasonable attorney fees as determined by the court.

**(5)** An action to enforce any liability created under this section may be brought in the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, without regard to the amount in controversy, within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the

A5

misrepresentation. Nothing in this section shall be construed to authorize any civil action by reason of any injury sustained as the result of a disclosure of a record prior to September 27, 1975.

**44 U.S.C. § 2904**

**§ 2904. General responsibilities for records management**

**(a)** The Archivist shall provide guidance and assistance to Federal agencies with respect to ensuring adequate and proper documentation of the policies and transactions of the Federal Government and ensuring proper records disposition.

**(b)** The Administrator shall provide guidance and assistance to Federal agencies to ensure economical and effective records management by such agencies.

**(c)** In carrying out their responsibilities under subsection (a) or (b), respectively, the Archivist and the Administrator shall each have the responsibility—

    **(1)** to promulgate standards, procedures, and guidelines with respect to records management and the conduct of records management studies;

    **(2)** to conduct research with respect to the improvement of records management practices and programs;

    **(3)** to collect and disseminate information on training programs, technological developments, and other activities relating to records management;

    **(4)** to establish such interagency committees and boards as may be necessary to provide an exchange of information among Federal agencies with respect to records management;

    **(5)** to direct the continuing attention of Federal agencies and the Congress on the need for adequate policies governing records management;

    **(6)** to conduct records management studies and, in his discretion, designate the heads of executive agencies to conduct records management studies with respect to establishing systems and techniques designed to save time and effort in records management;

**(7)** to conduct inspections or surveys of the records and the records management programs and practices within and between Federal agencies;

**(8)** to report to the appropriate oversight and appropriations committees of the Congress and to the Director of the Office of Management and Budget in January of each year and at such other times as the Archivist or the Administrator (as the case may be) deems desirable--

    **(A)** on the results of activities conducted pursuant to paragraphs (1) through (7) of this section,

    **(B)** on evaluations of responses by Federal agencies to any recommendations resulting from inspections or studies conducted under paragraphs (6) and (7) of this section, and

    **(C)** to the extent practicable, estimates of costs to the Federal Government resulting from the failure of agencies to implement such recommendations.

**(d)** In addition, the Administrator, in carrying out subsection (b), shall have the responsibility to promote economy and efficiency in the selection and utilization of space, staff, equipment, and supplies for records management.

**44 U.S.C. § 2905**

**§ 2905. Establishment of standards for selective retention of records; security measures**

    **(a)** The Archivist shall establish standards for the selective retention of records of continuing value, and assist Federal agencies in applying the standards to records in their custody. He shall notify the head of a Federal agency of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to his attention, and assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law. In any case in which the head of the agency does not initiate an action for such recovery

or other redress within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

**(b)** The Archivist shall assist the Administrator for the Office of Information and Regulatory Affairs in conducting studies and developing standards relating to record retention requirements imposed on the public and on State and local governments by Federal agencies.

## 44 U.S.C. § 3101

### § 3101. Records management by agency heads; general duties

The head of each Federal agency shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities.

## 44 U.S.C. § 3102

### § 3102. Establishment of program of management

The head of each Federal agency shall establish and maintain an active, continuing program for the economical and efficient management of the records of the agency. The program, among other things, shall provide for

**(1)** effective controls over the creation and over the maintenance and use of records in the conduct of current business;

**(2)** cooperation with the Administrator of General Services and the Archivist in applying standards, procedures, and techniques designed to improve the management of records, promote the maintenance and security of records deemed appropriate for preservation, and facilitate the segregation and disposal of records of temporary value; and

A9

**(3)** compliance with sections 2101-2117, 2501-2507, 2901-2909, and 3101-3107, of this title and the regulations issued under them.

**44 U.S.C. § 3105**

**§ 3105. Safeguards**

The head of each Federal agency shall establish safeguards against the removal or loss of records he determines to be necessary and required by regulations of the Archivist. Safeguards shall include making it known to officials and employees of the agency—

**(1)** that records in the custody of the agency are not to be alienated or destroyed except in accordance with sections 3301-3314 of this title, and

**(2)** the penalties provided by law for the unlawful removal or destruction of records.

**44 U.S.C. § 3106**

**§ 3106. Unlawful removal, destruction of records**

The head of each Federal agency shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency of which he is the head that shall come to his attention, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records he knows or has reason to believe have been unlawfully removed from his agency, or from another Federal agency whose records have been transferred to his legal custody. In any case in which the head of the agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

**44 U.S.C. § 3301**

**§ 3301. Definition of records**

    As used in this chapter, "records" includes all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them. Library and museum material made or acquired and preserved solely for reference or exhibition purposes, extra copies of documents preserved only for convenience of reference, and stocks of publications and of processed documents are not included.

**36 C.F.R. § 1222.10**

**§ 1222.10 How should agencies apply the statutory definition of Federal records?**

(a) The statutory definition of Federal records is contained in 44 U.S.C. 3301 and provided in § 1220.18 of this subchapter.

(b) Several key terms, phrases, and concepts in the statutory definition of a Federal record are further explained as follows:

(1) Documentary materials has the meaning provided in § 1220.18 of this subchapter.

(2) Regardless of physical form or characteristics means that the medium may be paper, film, disk, or other physical type or form; and that the method of recording may be manual, mechanical, photographic, electronic, or any other combination of these or other technologies.

(3) Made means the act of creating and recording information by agency personnel in the course of their official duties, regardless of the method(s) or the medium involved.

(4) Received means the acceptance or collection of documentary materials by or on behalf of an agency or agency personnel in the course of their official duties regardless of their origin (for example, other units of their agency, private citizens, public officials, other agencies, contractors, Government grantees) and regardless of how transmitted (in person or by messenger, mail, electronic means, or by any other method). In this context, the term does not refer to misdirected materials. It may or may not refer to loaned or seized materials depending on the conditions under which such materials came into agency custody or were used by the agency. Advice of legal counsel should be sought regarding the "record" status of loaned or seized materials.

(5) Preserved means the filing, storing, or any other method of systematically maintaining documentary materials in any medium by the agency. This term covers materials not only actually filed or otherwise

systematically maintained but also those temporarily removed from existing filing systems.

(6) *Appropriate for preservation* means documentary materials made or received which, in the judgment of the agency, should be filed, stored, or otherwise systematically maintained by an agency because of the evidence of agency activities or information they contain, even if the materials are not covered by its current filing or maintenance procedures.

**36 C.F.R. § 1222.12**

**§ 1222.12 What types of documentary materials are Federal records?**

(a) *General.* To ensure that complete and accurate records are made and retained in the Federal Government, agencies must distinguish between records and nonrecord materials by applying the definition of records (see 44 U.S.C. 3301 and 36 CFR 1220.18 and 1222.10 of this subchapter) to agency documentary materials in all formats and media.

(b) *Record status.* Documentary materials are records when they meet the conditions specified in § 1222.10(b).

(c) *Working files and similar materials.* Working files, such as preliminary drafts and rough notes, and other similar materials, are records that must be maintained to ensure adequate and proper documentation if:

(1) They were circulated or made available to employees, other than the creator, for official purposes such as approval, comment, action, recommendation, follow-up, or to communicate with agency staff about agency business; and

(2) They contain unique information, such as substantive annotations or comments that adds to a proper understanding of the agency's formulation and execution of basic policies, decisions, actions, or responsibilities.

(d) *Record status of copies.* The determination as to whether a particular document is a record does not depend upon whether it contains unique information. Multiple copies of the same document and documents

A13

containing duplicative information may each have record status depending on how they are used in conducting agency business.